IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOBBY W. LEE,                         )   No. C 06-3847 CW (PR)
                                      )
        Plaintiff,                    )
                                      )   ORDER OF SERVICE
   v.                                 )
                                      )
M. COLLIER, ET AL.,                   )   (Docket no. 2)
                                      )
        Defendants.                   )
_____)

INTRODUCTION

Plaintiff Bobby W. Lee, a state prisoner currently incarcerated at California State Prison - Sacramento (SAC), has filed this civil rights action under 42 U.S.C. § 1983 and seeks leave to proceed in forma pauperis.

Venue is proper in this district because the injuries complained of occurred when Plaintiff was incarcerated at Salinas Valley State Prison (SVSP) and Corcoran State Prison (CSP), which are both located within the Northern District of California. See 28 U.S.C. §§ 84(a), 1391(b).

BACKGROUND

The following facts are derived from the allegations in Plaintiff's complaint, which are taken as true and construed in the light most favorable to Plaintiff for purposes of the Court's initial review of the complaint. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

On June 23, 2003, Plaintiff was in the process of moving his property from cell #107 to cell #110 in Building D-5 at SVSP,[1]

---

[1] Plaintiff claims that the reason for the cell move was that he and his cell mate (from cell #107) "did not get along."

when the inmates housed in cell #110 assaulted Defendant SVSP Correctional Officer Marshall E. Denning. Plaintiff was placed in restraints and interviewed by SVSP prison officials immediately following the incident. During the interview, Plaintiff claimed that he "had no knowledge of, nor did he have any involvement in [the] incident." Later that day, Plaintiff and two other inmates from cell # 110 were transferred to CSP and placed in administrative segregation. The Administrative Segregation Placement Notice dated June 23, 2003 states that the "placement occurred based on [Plaintiff's] possible participation in 'Assault on Staff' at SVSP." (See Pl.'s Ex. A.) Plaintiff claims that his legal documents were confiscated after he was placed in segregation.[2] He alleges that he remained in CSP's Secured Housing Unit (SHU) for fourteen months and that he was transferred to SAC on October 20, 2004.

Plaintiff claims that Defendants Lewis and Collier, who signed the Incident Report regarding a charge of "Attempted Murder of a Peace Officer" dated June 24, 2003, "conspired to and did violate Plaintiff's constitutionally protected rights as they (without even some evidence) or (investigation) . . . concluded and signed documents which contained fabricated charges." (See Pl.'s Ex. E.) He also claims that Defendant Pennisi falsely reported in a Rules

---

[2] Plaintiff also claims that his eyeglasses were confiscated as a result of his placement in segregation; however, they were eventually returned to him. While he claims that his glasses were "broken" when they were returned to him, he fails to allege any constitutional violations relating to the confiscation or destruction of his eyeglasses. Therefore, the Court will only consider his claim relating to the confiscation of his legal documents.

2

1  Violation Report on July 3, 2003 that Plaintiff was involved in
2  "Conspiracy to Commit Murder/Attempted Murder."  (See Pl.'s Ex. D.)
3       Plaintiff filed the present complaint on June 20, 2006,
4  alleging that Defendants violated his federal and state
5  constitutional rights based on their involvement in placing him in
6  segregation for fourteen months without any substantive evidence.
7  He seeks injunctive relief and monetary damages.

## STANDARD OF REVIEW

9       A federal court must conduct a preliminary screening in any
10 case in which a prisoner seeks redress from a governmental entity
11 or officer or employee of a governmental entity.  28 U.S.C.
12 § 1915A(a).  In its review, the court must identify any cognizable
13 claims and dismiss any claims that are frivolous, malicious, fail
14 to state a claim upon which relief may be granted or seek monetary
15 relief from a defendant who is immune from such relief.  Id.
16 § 1915A(b)(1), (2).
17      To state a claim under 42 U.S.C. § 1983, a plaintiff must
18 allege two essential elements: (1) that a right secured by the
19 Constitution or laws of the United States was violated, and
20 (2) that the alleged violation was committed by a person acting
21 under the color of State law.  West v. Atkins, 487 U.S. 42, 48
22 (1988).  "'[A] complaint should not be dismissed for failure to
23 state a claim unless it appears beyond doubt that the plaintiff can
24 prove no set of facts in support of his claim which would entitle
25 him to relief.'"  Terracom v. Valley National Bank, 49 F.3d 555,
26 558 (9th Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46
27 (1957)).  Pro se pleadings must be liberally construed.  Balistreri
28 v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

DISCUSSION

I.  Legal Claims

    A.  Injunctive Relief Claims

Plaintiff seeks both injunctive relief and money damages (including compensatory and punitive damages). The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. PUC v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." Flast v. Cohen, 392 U.S. 83, 95 (1968). Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances. See Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness. Id.

Because Plaintiff is no longer incarcerated at either SVSP or CSP, his claims for injunctive relief are DISMISSED as moot. See Mitchell, 75 F.3d at 528.

4

B.   Claims Related to Plaintiff's Placement in CSP's SHU

Plaintiff asserts that his placement in segregation for fourteen months without a hearing and without any substantive evidence as to his involvement in the June 23, 2003 assault incident violated his due process and equal protection rights.

1.   Due Process Claim

Construing his complaint liberally, Plaintiff seems to be challenging both his initial placement in administrative segregation "pending investigation by SVSP" and the final disciplinary determination that led to his fourteen-month placement in CSP's SHU.

In Toussaint v. McCarthy, the Ninth Circuit held that when prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process requires that they comply with the following procedures: (1) they must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) the prisoner must be allowed to present his views.  See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986).  Due process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, a written decision describing the reasons for placing the prisoner in administrative segregation or disclosure of the identity of any person providing information leading to placement of a prisoner in administrative segregation.  See id. at 1100-01.

Before a prisoner may be placed in disciplinary segregation

for the violation of prison rules, he or she must be afforded greater procedural protections than those set out in Toussaint. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." See id.  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.  Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board.  The Ninth Circuit requires that "some evidence" also support a decision

6

to place an inmate in segregation for administrative reasons. See Toussaint, 801 F.2d at 1104. The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See id. at 1105 (citing Hill, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. See id. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. See id.

The Ninth Circuit also requires that the evidence relied upon by prison disciplinary boards contain "some indicia of reliability," see Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987), but has not directly considered whether a corresponding need for evidentiary reliability exists when prison officials segregate an inmate for administrative reasons. Some district courts have extended the reliability requirement to the administrative context, however, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy due process requirements." Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

If Plaintiff is complaining of his initial placement in administrative segregation pending disciplinary proceedings, his claim will fail because he was provided with all the procedural protections he was due at that stage. In fact, SVSP prison officials informed him that "placement occurred based on [his] possible participation in 'Assault on Staff' at SVSP."

Plaintiff alleges that no hearing was held before the final disciplinary determination that led to his fourteen-month placement

7

in CSP's SHU. He claims that Defendant Pennisi falsified a report charging Plaintiff with "attempted murder and conspiracy to commit murder" because of his alleged involvement in the June 23, 2003 incident. He alleges that he was "placed in punitive segregation with false charges of attempted murder (when Defendants knew Plaintiff had nothing to do with the charged incident)." Liberally construing this claim, if Plaintiff is complaining that he was disciplined based on false charges, he has stated a cognizable claim because he alleges he was not afforded the Wolff protections.

Because the exact nature of Plaintiff's placement in segregation is unclear, the Court will order service of this claim so that Defendants may address Plaintiff's claim.

### 2. Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. See Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). Plaintiff must demonstrate that state actors "acted with the intent to discriminate." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir. 1991).

Plaintiff does not allege that he was placed in segregation

8

because of his race, instead he claims it was based on false charges against him. In the body of the complaint, his allegations of racial discrimination are conclusory and ambiguous. Thus, the Court finds that Plaintiff has not stated a cognizable equal protection claim.

Accordingly, Plaintiff's equal protection claim is DISMISSED.

C.   Denial of Access to the Courts Claim

In conjunction with the aforementioned claims relating to his placement in CSP's SHU, Plaintiff alleges that Defendants violated his constitutional right to access to the courts by confiscating his legal documents, which he needed for an action that was active at that time.

Prisoners have a constitutional right to be afforded "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). This right applies to prisoners' challenges to their convictions or sentences or their conditions of confinement. See id. at 355. Prison officials may not "actively interfer[e] with inmates' attempts to prepare legal documents or file them." Id. at 350 (citations omitted). In order to state a cognizable claim for denial of access to the courts, a prisoner must allege an actual injury. Id. at 349-50. Specifically, the prisoner must allege that interference by prison officials hindered his or her efforts to pursue a legal claim. Id. at 351. Even if the prisoner makes this showing, the denial of access claim will fail if the hindrance of the prisoner's access to court was reasonably related to legitimate penological interests. See id. at 361 (citing Turner v.

Safley, 482 U.S. 78, 89 (1987)).

The Court finds that Plaintiff has asserted a cognizable claim of denial of access to the courts.

D.  State Law Claims

In addition to the federal claims discussed above, Plaintiff asserts state law claims against Defendants.  Because his state law claims arise out of the same acts and events giving rise to Plaintiff's federal claims, the Court will exercise supplemental jurisdiction over the claims.  See 28 U.S.C. § 1367(a).

Plaintiff asserts claims against Defendants for violating his state constitutional rights by filing false reports regarding his involvement in the June 23, 2003 assault incident.  The Court finds his state law claims cognizable.  If Defendants believe Plaintiff's claims fail to assert valid state law causes of action, they may seek dismissal of the claims by filing a motion to dismiss.  See Fed. R. Civ. P. 12(b)(6).

II. Proper Defendants

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the

plaintiff complains.  <u>Leer</u>, 844 F.2d at 633.[3]  Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" acts which deprived him of protected rights.  <u>Id.</u> at 634.

    A.   Named Defendants

Plaintiff alleges that Defendants Lewis, Collier and Pennisi acted directly to place Plaintiff in segregation without justification and to deny him of his legal property, in violation of his federal and state constitutional rights.

Plaintiff fails to directly link Defendants Denning and Caden to his allegations and instead, he makes conclusory allegations that they "conspired to and did violate Plaintiff's constitutionally protected rights."

In support of his allegations against Defendant Denning, Plaintiff attaches the first page of a Complaint for Damages filed by Defendant Denning against Plaintiff and the other two inmates involved in the June 23, 2003 incident.  (<u>See</u> Pl.'s Ex. N.) However, the Court finds this attachment is insufficient to warrant service on Defendant Denning.  Therefore, Plaintiff's claim against Defendant Denning is dismissed with leave to amend.  In his amended complaint, Plaintiff must link Defendant Denning to his claim by explaining what Defendant Denning did that caused a violation of Plaintiff's constitutional rights.  See <u>Leer</u>, 844 F.2d at 634.

Plaintiff claims that Defendant Caden, who is responsible for

---

[3] The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  <u>Leer</u>, 844 F.2d at 633 (citations omitted).

11

running the prison as Chief Deputy Warden, should be liable because he is "required to follow the letter of the law, and safeguard Plaintiff's due process [rights]."  This is a respondeat superior claim, that is, Plaintiff seeks to hold Defendant Caden liable as the superior of the persons Plaintiff contends violated his rights.  This is, however, not a proper basis for Section 1983 liability.  A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted), cert. denied, 502 U.S. 1074 (1992).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Accordingly, the claims against Defendant Caden are dismissed.

    B.    Doe Defendants

Plaintiff identifies several Doe Defendants involved in the review and classification of the report written by Defendant Pennisi regarding the June 23, 2003 assault incident.  The use of "John Doe" to identify a defendant is not favored in the Ninth Circuit.  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  However, where the identity of alleged defendants cannot be known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify them.  See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

Accordingly, the claims against the Doe Defendants are

12

dismissed from this action without prejudice.  Should Plaintiff learn their identities, he may move to file an amended complaint to add them as named defendants.  See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.   Leave to proceed in forma pauperis is GRANTED (docket no. 2).

2.   Plaintiff's claims for injunctive relief are DISMISSED.

3.   Plaintiff has stated COGNIZABLE claims against SVSP Lieutenant G.D. Lewis and SVSP Correctional Officers M. Collier and L.M. Pennisi for their involvement in deciding to retain Plaintiff in segregation for fourteen months, in violation of Plaintiff's rights to due process and access to the courts.

4.   Plaintiff's equal protection claim is DISMISSED.

5.   The Court asserts SUPPLEMENTAL JURISDICTION over Plaintiff's state law claims.

6.   Plaintiff's claims against Defendant Denning are DISMISSED WITH LEAVE TO AMEND as indicated above.  Within thirty (30) days of the date of this Order Plaintiff may file an amended claim against Defendant Denning (Plaintiff shall resubmit only that claim and not the entire complaint) as set forth above in Section II(A) of this Order.  The failure to do so will result in the dismissal of the claim against Defendant Denning without prejudice.

7.   Plaintiff's claims against Defendant Caden are DISMISSED.

8.   Plaintiff's claims against the Doe Defendants are DISMISSED from this action without prejudice.

9.   The Clerk of the Court shall mail a Notice of Lawsuit and

13

Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (docket no. 1) and a copy of this Order to <u>SVSP Lieutenant G.D. Lewis and SVSP Correctional Officers M. Collier and L.M. Pennisi</u>.  The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco.  Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

    10.  Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint.  Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form.  If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before <u>sixty (60) days</u> from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due <u>sixty (60) days</u> from the date on which the request for waiver was sent or <u>twenty (20) days</u>

14

from the date the waiver form is filed, whichever is later.

11. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

    a. No later than <u>ninety (90) days</u> from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

    b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than <u>sixty (60) days</u> after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to <u>pro se</u> plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to

15

>        interrogatories, or authenticated documents, as provided
>        in Rule 56(e), that contradict the facts shown in the
>        defendant's declarations and documents and show that
>        there is a genuine issue of material fact for trial.  If
>        you do not submit your own evidence in opposition,
>        summary judgment, if appropriate, may be entered against
>        you.  If summary judgment is granted [in favor of the
>        defendants], your case will be dismissed and there will
>        be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion.  Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration.  Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

      c.  If Defendants wish to file a reply brief, they shall do so no later than thirty (30) days after the date Plaintiff's opposition is filed.

      d.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

   12.  Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure.  Leave of the Court pursuant

16

to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

13. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

14. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

15. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than <u>fifteen (15) days</u> prior to the deadline sought to be extended.

16. This Order terminates Docket no. 2.

IT IS SO ORDERED.

DATED: 6/11/07

*Claudia Wilken*

CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BOBBY LEE,

        Plaintiff,

  v.

M. COLLIER et al,

        Defendant.

Case Number: CV06-03847 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 11, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert Lee T-88957
F.B. 8-102 Low
CA State Prison-New Folsom
P.O. Box 290066
Represa, CA 95671-0066

Dated: June 11, 2007

                                    Richard W. Wieking, Clerk
                                    By: Sheilah Cahill, Deputy Clerk