IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOBBY W. LEE,

    Plaintiff,

  v.

M. COLLIER, et al.,

    Defendants.
                                  /

No. C 06-3847 CW (PR)

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants move for summary judgment on all of Plaintiff's claims.  Plaintiff opposes the motion.  Having considered all of the papers filed by the parties, the Court GRANTS the motion.

BACKGROUND

    Plaintiff Bobby W. Lee, at the time of the incident that is the subject of this litigation, was a state prisoner at Salinas Valley State Prison (SVSP) in California.  Defendants M. Collier, L. Pennisi, and G. Lewis are or were correctional officers at SVSP.

    On June 23, 2003, Plaintiff, who was scheduled to move to a new cell, began moving his things from his old cell, #107, to his

new cell, #110.  Inmate Adegbenro,[1] who was housed in cell #107, was helping Plaintiff move his belongings to cell #110.  Inmate Kinsey exited cell #110 to make room for Plaintiff's belongings.  During the move, Inmate Adegbenro attacked Correctional Officer M. Denning, stabbing and slashing the officer with an inmate-manufactured knife.  Inmate Kinsey fought off two other correctional officers who were attempting to come to Officer Denning's aid.  During the attack, Plaintiff retreated into cell #110, where he assumed a prone, face-down position on the floor.  Officers eventually subdued Inmates Adegbenro and Kinsey.  An officer restrained Plaintiff with handcuffs and leg shackles, then cut off Plaintiff's shirt and pants and removed his shoes.

Plaintiff was then escorted to an interview room, where he made a statement that he was not involved in the attack and had no knowledge of it beforehand.  Then Plaintiff was placed in a holding cage.  Plaintiff informed the officers that he had legal documents in his cell relating to an ongoing criminal appeal, and he was assured that those documents would be transferred with him.

Defendant Pennissi and other correctional officers wrote Crime/Incident Reports describing the attack on Officer Denning.  The reports disclose that Plaintiff did not participate in the attack but assumed a prone, face-down position during it.  Defendant Lewis prepared a cover sheet for those reports, and Defendant Collier signed the cover sheet.

Plaintiff and Inmates Kinsey and Adegbenro received Rules

---

[1] The first names of the inmates are not provided by the parties.

2

Violation Reports (RVR), and prison officials referred the incident to the Monterey County District Attorney's office for possible felony prosecution.

On the day of the incident, June 23, 2003, in an emergency transfer, Plaintiff and Inmates Kinsey and Adegbenro were moved from SVSP to Corcoran State Prison (CSP) and placed in the Secured Housing Unit (SHU). On July 7, 2003, Plaintiff was transferred from CSP's SHU to Ad/Seg, where he remained for fourteen months. During that time, Plaintiff had five hearings before the CSP Institutional Classification Committee (ICC). Each time, the ICC determined that Plaintiff should remain in Ad/Seg. For each hearing, Plaintiff received advance notice, at least twenty-four hours to prepare, a written statement of the reasons for his retention in Ad/Seg, the chance to call witnesses and present evidence, and consideration for or assignment of a staff assistant.

On August 27, 2004, Plaintiff appeared before a Senior Hearing Officer in the Department of Corrections for adjudication of his RVR. The officer found Plaintiff not guilty of attempted murder and referred him to the ICC for a placement review. On September 16, 2004, Plaintiff was transferred back to SVSP and placed again in Ad/Seg because, according to the ICC,

> your presence within the general population at SVSP is deemed a threat to your safety, the safety of staff and other inmates and the security of this institution. You will remain in Ad/Seg under single cell status, pending administrative review of your appropriate housing and programming needs.

Decl. Lisa Sciandra at Ex. V, Ad/Seg Placement Notice.

On September 21, 2004, Plaintiff appeared before the ICC again

3

for an administrative review.  The ICC decided he should remain in Ad/Seg, noting that Officer Denning, the victim of the attack, had "stated that he would not feel safe with Lee housed at SVSP and would like him transferred."  Opp. Ex. F, Committee's Comments, Initial Ad/Seg Review.  The ICC's stated reason for keeping Petitioner in Ad/Seg was that he "[p]resents an immediate threat to the safety of self or others."  Opp. Ex. V, Placement Notice. Plaintiff remained in Ad/Seg at SVSP for one month, until he was transferred to Folsom State Prison, where he was placed in the general population.

Plaintiff claims that Defendants denied him due process by filing false reports and conspiring to place him in Ad/Seg. Plaintiff further claims that Defendants denied him access to the courts by confiscating and delaying the delivery of his legal papers, thus interfering with his ability to appeal his underlying conviction and causing him emotional distress.  On June 11, 2007, the Court issued an Order of Service and found these two federal claims cognizable.[2]

Plaintiff also makes the following state law claims: violations of California Penal Code §§ 118.1 (peace officers knowingly and intentionally filing a false report), 132 (offering forged or fraudulently altered documents as evidence), 133 (witness tampering), and 134 (fraudulently preparing documents for "any trial, proceeding, or inquiry whatever") and violations of California Code of Regulations tit. 15, §§ 3338 (guidelines for

---

[2] The Court found that Plaintiff's equal protection claim was not cognizable.

4

hearings on segregated housing) and 3339 (guidelines for release and retention in Ad/Seg).

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of

5

production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no

1  obligation to offer any evidence in support of its opposition.  Id.
2  This is true even though the non-moving party bears the ultimate
3  burden of persuasion at trial.  Id. at 1107.

DISCUSSION

I.   Due Process Claim

Plaintiff claims his due process rights were violated because Defendants placed him in administrative segregation based on false charges of attempted murder, when they knew he had nothing to do with the charged incident.

A.   Legal Standard

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Although prison disciplinary proceedings do not require the full panoply of rights due a defendant in a criminal prosecution, the Due Process Clause requires certain minimum procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance."  Sandin v. Conner, 515 U.S. 472, 477-87 (1995); Wolff, 418 U.S. 539, 556-57 n.19 (1973).

"Real substance" will generally be limited to freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) state action that "will inevitably affect the duration of [a] sentence."  Sandin, 515 U.S. at 484, 487.

The hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement

to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself. Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (applying Hewitt v. Helms, 459 U.S. 460, 468 (1983)). Thus, prisoners have no constitutional right or interest independently protected by the Due Process Clause to be free from placement in administrative segregation. Id. The Ninth Circuit, however, has held that California statutes and prison regulations create a liberty interest in freedom from administrative segregation which is protected by due process. Id. at 1098. California Code of Regulations tit. 15, § 3335(a) permits placement in administrative segregation where the presence of an inmate in the general population poses a threat to his own safety and/or to an ongoing investigation of serious misconduct or criminal activity. Section 3339(a) provides that release from segregation shall occur at the earliest possible time. Toussaint held that, when read together, these regulations create a liberty interest in freedom from administrative segregation. Toussaint, 801 F.2d at 1098.

Therefore, before a prisoner may be placed in segregation for the violation of prison rules, he or she must be afforded five procedural protections. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a

8

'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.  Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board.  The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons.  See Toussaint, 801 F.2d at 1104-05 (citing Hill, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Id. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. Id.

9

B.  Analysis

Plaintiff's claim that Officer Pennissi falsified a legal document by stating that Plaintiff conspired to commit murder or attempted murder seems to be referring to the Crime/Incident report that Officer Pennissi prepared immediately after the attack on Officer Denning.  In that report, Officer Pennissi does not state that Plaintiff participated in the attack, but only that Plaintiff was moving to a new cell when the attack occurred.  The report corresponds with Plaintiff's own description of events surrounding the attack by noting that Plaintiff was "caught up in the commotion" and that he "retreated into cell 110" during the attack.  Therefore, this claim does not provide a basis for a due process violation.

Plaintiff further argues that Officers Lewis and Collier violated his rights because, "as supervisory staff/prison officials [they] . . . signed documents which contained fabricated charges."  The evidence shows that the only documents signed by Officers Lewis and Collier were the cover sheet for the Crime/Incident Reports.  Officers Lewis and Collier did not participate in issuing the RVR to Plaintiff.  Id.; Decl. Collier at 2.  As stated above, Plaintiff fails to show that Officer Pennissi's report or any other officers' reports contained any fabrications.  Plaintiff has thus provided no basis on which a jury could find that Officers Lewis or Collier signed or approved a false or fabricated report.

Plaintiff likewise has presented no evidence to refute Defendants' declarations that they were not involved in the decision to transfer Plaintiff to Ad/Seg or SHU.  Those decisions

10

were made by the ICC, of which Defendants were not members.  In making its decisions, the ICC relied on the Crime/Incident Report prepared by Officer Pennissi after the attack and the cover sheet prepared by Defendant Lewis and signed by Officer Collier. However, as stated above, the statements made in those documents are all accurate.  Officer Lewis states that Crime/Incident Reports are necessarily "based on preliminary information, because we have not yet completed a full investigation and do not have all the facts," and Plaintiff "would have been considered a suspect for the alleged conspiracy to murder a correctional officer because he had requested the cell move during which his cell partner attempted to murder a correctional officer."  Lewis Decl. at 2.  It was the job of the Salinas Valley Investigative Services Unit (ISU), not Defendants, to investigate further.  Collier Decl. at 2.

During the time Plaintiff was housed in Ad/Seg at CSP, five hearings were held regarding his status.  Defendants present evidence that, for each hearing, Plaintiff received advance written notice of the charges, at least twenty-four hours of preparation time, a written statement from the committee explaining the basis for its decision, and the opportunity to present evidence in his defense and call witnesses.  Plaintiff has not disputed this evidence.  Defendants also present evidence that Plaintiff received these same protections when he was transferred back to Ad/Seg at SVSP.  Plaintiff does not dispute this evidence, either.  Thus, Plaintiff received all the due process protections required by Wolff.

At each hearing at CSP, the ICC determined that Plaintiff

11

should remain in Ad/Seg because the Senior Hearing Officer had not yet adjudicated the RVR filed against Plaintiff. An investigation regarding Plaintiff's involvement in the stabbing incident was ongoing, and the committee deemed it necessary to keep Plaintiff in Ad/Seg until that investigation was complete. As stated above, California Code of Regulations tit. 15, § 3335(a) permits placement of a prisoner in Ad/Seg if that prisoner's presence in the general population would threaten an ongoing investigation of serious misconduct or criminal activity. When Plaintiff returned to SVSP from CSP, the ICC determined that, until he could be transferred to another prison, Plaintiff should remain in Ad/Seg for his own safety and because Officer Denning, the victim of the attack, did not feel safe around Plaintiff.

Thus, the record contains "some evidence" to support the ICC's decision to place Plaintiff in Ad/Seg and SHU at CSP and in Ad/Seg upon his return to SVSP.

Defendants also claim that Plaintiff is a member of the Crips gang and Inmates Adegbenro and Kinsey were also Crips members, and that this made Plaintiff a reasonable suspect in the attack. Plaintiff declares that he is not a Crips member and argues that this raises a disputed issue of fact. However, even assuming arguendo that Plaintiff is not a gang member, there is still evidence to support the ICC's decision to place Plaintiff in Ad/Seg and SHU.

Because Defendants did not fabricate charges against Plaintiff and did not participate in decisions regarding his transfer or placement, and because Plaintiff received all necessary due process

12

protections during his detention in Ad/Seg and SHU, Defendants are entitled to summary judgment on the due process claim.

II.   Denial of Access to the Courts Claim

Plaintiff claims that Defendants violated his constitutional right to access to the courts by confiscating his legal papers, which he needed for his pending criminal appeal.

Prisoners have a constitutional right to be afforded "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).  This right applies to prisoners' challenges to their convictions or sentences or conditions of confinement.  Id. at 355.  Prison officials may not "actively interfer[e] with inmates' attempts to prepare legal documents or file them."  Id. at 350 (citations omitted).  To establish a claim for any violation of the right of access to the courts, prisoners must prove an actual injury by showing that their efforts to pursue a non-frivolous claim concerning their conviction or conditions of confinement has been hindered.  Id. at 350-55.

Once a prisoner establishes a denial of access to the courts, the court should then determine whether the hindrance of the prisoner's access to court was reasonably related to legitimate penological interests.  Id. at 361 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  The denial of access claim will fail if the hindrance of the prisoner's access to court was reasonably related to legitimate penological interests.  Id.

Although Plaintiff's legal papers were confiscated after the

13

attack, they were collected by Salinas Valley ISU, not by Defendants. Collier Decl. at 2; Pennisi Decl. at 2; Lewis Decl. at 3. After the attack on Officer Denning, Plaintiff's cell was designated a crime scene. Therefore, collection of Plaintiff's property was reasonably related to a legitimate penological interest. Furthermore, as Defendants have shown, Plaintiff eventually received his property, was represented by counsel in his criminal appeal, and was ultimately partially successful in that appeal. Therefore, Plaintiff has failed to show an actual injury or hindrance in his access to the courts, as required by Lewis v. Casey. Defendants are therefore entitled to summary judgment on this claim.

III. State Law Claims

Plaintiff asserts state law claims against Defendants under California Penal Code §§ 118.1, 132, 133, and 134 and California Code of Regulations tit. 15, §§ 3338 and 3339.

The decision to charge an individual with criminal violations is solely within the discretion of the district attorney. Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Doyle v. Oklahoma Bar Ass'n, 998 F.2d 1559, 1566-67 (10th Cir. 1993) (private citizen has no standing to have lawyer disciplined or criminally charged); Satler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (neither member of public at large nor victim has right to have another criminally prosecuted). The California Code of Regulations and Penal Code sections which Plaintiff cites are designed to guide prison staff; they do not

14

provide prisoners with rights to sue.  See Sandin, 515 U.S. at 481-82 (prison regulations "guide correctional officials in the administration of a prison" and do not "confer rights on inmates").

Because the California statutes cited by Plaintiff do not provide a right to bring a private cause of action, Defendants are entitled to summary judgment on Plaintiff's state claims.

IV.  Qualified Immunity

Defendants also claim qualified immunity, but because the Court has found no constitutional violation, a qualified immunity analysis is not necessary.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket #19) is GRANTED in favor of all Defendants. Judgment shall enter accordingly, and the clerk shall close the file.  The parties shall bear their own costs.

IT IS SO ORDERED.

Dated:  8/22/08

CLAUDIA WILKEN
United States District Judge

Copies mailed to counsel
as noted on the following page

15

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BOBBY LEE,

       Plaintiff,

v.

M. COLLIER et al,

       Defendant.

Case Number: CV06-03847 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 22, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Lisa M. Sciandra
Office of the Attorney General
455 Golden Gate Ave, Ste. 11000
San Francisco, CA 94102-7004

Robert Lee T-88957
A1-211
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95531-7500

Dated: August 22, 2008

       Richard W. Wieking, Clerk
       By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California